United States Courts
Southern District of Texas
**FILED**

JUN 1 2 2013

David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **CRIMINAL NO. 12-774S** |
| vs. | § | |
| | § | |
| **LAWRENCE T. TYLER and** | § | |
| **MATHEW OKOROCHA,** | § | **UNDER SEAL** |
| **Defendants** | § | |
| | § | |

**Sealed**
Public and unofficial staff access
to this instrument are
prohibited by court order.

## SECOND SUPERSEDING INDICTMENT

**UNSEALED
PER ARREST**

THE GRAND JURY CHARGES:

## COUNT ONE
## (Conspiracy – 18 U.S.C. 371)

### A.  Introduction

At all times material to this indictment:

### The Medicare Program

1.     The Medicare Program ("Medicare") is a federally funded health insurance program that provided health care benefits to certain individuals, primarily the elderly, blind and disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), an agency of the United States Department of Health

1

and Human Services ("HHS"), formerly known as the Health Care Financing Administration ("HCFA"). Individuals who received benefits under Medicare were often referred to as Medicare "beneficiaries."

2.      Medicare is a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

3.      Medicare pays for certain durable medical equipment (DME), including orthotic braces, gloves, walkers, wheelchairs and related equipment.   DME is repeatedly used equipment which is designed for a medical purpose.

4.      HHS through CMS, contracted with Cigna, to process DME claims submitted for individuals who receive Medicare benefits.  These individuals are commonly referred to as beneficiaries.

**The Medicaid Program**

5.      The Medicaid program is a state-administered health insurance program funded predominately by the United States Government and administered by the State of Texas.  The Medicaid program helps pay for reasonable and necessary medical procedures and services provided to individuals who are deemed eligible under state low-income programs.

6.      The Texas Medicaid Program is a cooperative federal-state program to furnish medical assistance to the indigent. Medicaid is also a health care benefit program, as

defined by Title 18, United States Code, Section 24(b).   Among the types of reimbursable medical assistance available to covered persons are durable medical equipment.

7.      Upon assignment of a Medicaid provider number to a health care provider, the current Texas Medicaid Provider Procedures manual was distributed to the provider and available on the internet.  The procedure manual, bulletins and updates contained the rules and regulations pertaining to services covered by Medicaid and how to appropriately bill for providing these services to recipients.

8.      The Medicaid Program in Texas may pay a portion of a claim originally submitted to Medicare in the event the patient has qualified for both Medicare and Medicaid coverage. This portion was generally 20 percent of the Medicare allowance for the billed charge.  Medicaid will pay its portion if Medicare originally allowed the claim.  If a Medicaid recipient was not also a Medicare beneficiary, the claims may have been submitted directly to Medicaid. The guidelines regarding payment of these claims were contained in the provider procedures manual given to durable medical equipment providers upon enrollment in the Medicaid Program and were similar to Medicare guidelines.

9.      Medicaid regulations required that a provider document every service rendered to a patient for which a bill is submitted to Medicare and/or Medicaid.   This

3

documentation was part of the patient's medical records and was required to be retained by the provider for a period of not less than five years.

## DME SUPPLIERS AND MEDICARE BILLING PROCEDURES

10.    To receive reimbursement from Medicare for DME equipment provided to Medicare beneficiaries, a DME supplier was required to be an approved Medicare supplier. The DME supplier obtained this approval by submitting an application to Medicare. If the supplier met certain minimum qualifications, Medicare approved the application, and the supplier was issued a unique identification number also known as a supplier number. The DME supplier was then allowed to submit bills for services, known as claims, to Medicare for reimbursement for the cost of distributing medically necessary DME to Medicare beneficiaries.

11.    When DME suppliers provided services to a Medicare beneficiary in the form of DME equipment, Medicare permitted approved DME suppliers to submit Medicare claims on paper or electronically. Medicare required that submitted claims contain the following details: the Medicare beneficiary's name and Medicare identification number; the name and unique provider identification number of the physician who ordered the equipment; the equipment that the provider provided; the date of service; and the charge for the equipment provided.

4

## DME, ORTHOTIC BRACES AND PHYSICIAN'S ORDERS

12.     Under Medicare rules, Medicare Part B would pay for the cost of medically necessary orthotic braces, wheelchairs and related equipment when supplied to a beneficiary if the beneficiary had a debilitating medical condition which would be improved by the use of an orthotic brace, wheelchair and/or related equipment. The need for the equipment must be documented by a licensed physician or approved medical practitioner in the form of a physician's order or Certificate of Medical Necessity (CMN).

13.     In order for a DME supplier to be reimbursed for providing an orthotic brace, wheelchair and/or related equipment to a Medicare beneficiary, Medicare required that the supplier obtain documentation that the equipment be medically necessary. Although no specific document outside of a simple physician's order was required to support the patient's medical need for the equipment, the patient's treating physician was required to assess the patient's need for and benefit from the equipment.

## THE DEFENDANTS

14.     LAWRENCE T. TYLER was a resident of Houston, Texas and the owner operator of 1866ICPAYDAY.COM, L.L.C., also operating under the assumed name of Global Medical Supply Group.   Both companies maintained the same business location in Houston, Texas.

15.  MATHEW OKOROCHA was a resident of Houston, Texas and the owner operator of a KC International Medical Supply, Inc. (KC International), in Houston, Texas.

16.  From on or about February 2007 and continuing until on or about July of 2009, 1866ICPAYDAY.COM submitted claims to Medicare totaling approximately $1,622,830.95 under certain DME codes, and was paid approximately $1,091,483.08 on DME equipment claimed to have been ordered by a treating physician as medically necessary for Medicare and Medicaid patients, and claimed to have been delivered. From February of 2007 through January of 2009, 1866ICPAY.COM, LLC submitted to Medicaid claims totaling approximately $835,313.37 and was paid $147,340.77 in DME equipment claimed to have been ordered by a treating physician as medically necessary and claimed to have been delivered.

## THE CONSPIRACY

17.  Beginning in or about October of 2005, the exact date being unknown and continuing thereafter to in or about July of 2009, in the Houston Division of the Southern District of Texas and elsewhere, defendants,

### LAWRENCE T. TYLER and
### MATHEW OKOROCHA

did knowingly, intentionally and willfully combine, conspire, confederate and agree

with each other and with persons known and unknown to the grand jury to commit and aid and abet certain offenses against the United States:

a. To violate the Health Care Fraud statute, that is, to knowingly and willfully execute and attempt to execute a scheme and artifice: (1) to defraud a health care program, namely the Medicare and Medicaid programs; and (2) to obtain by means of material false and fraudulent pretenses, representations and promises, money and property owned by or under the custody and control of a health care benefit program, namely the Medicare and Medicaid programs connection with the delivery of and payment for health care equipment, namely certain orthotic braces, wheelchairs and/or related items, in violation of Title 18, United States Code, Section 1347; and

b. To violate the Anti-Kickback statute by knowingly and willfully offering and paying remuneration, including any kickback, directly or indirectly, overtly or covertly, in cash or in kind to induce the referral of Medicare and/or Medicaid beneficiaries for the furnishing and arranging for the furnishing of any item or service for which payment may be made in whole or in part under the Medicare program, in violation of Title 42 U.S.C. 1320a-7b(b)(2)(A).

## OBJECT OF THE CONSPIRACY

18.    It was the purpose of the conspiracy that the defendants, and others known and unknown to the Grand Jury, would unlawfully enrich themselves by falsely and

7

fraudulently representing to Medicare and Medicaid that:

a. various types of DME equipment, including but not limited to, orthotic braces and related equipment, were being provided to beneficiaries when in fact the medical equipment was not provided and/or not medically necessary;

b. various types of DME equipment, including but not limited to, orthotic equipment, was actually purchased, when the equipment had not been purchased;

c. the claims submitted to Medicare and Medicaid accurately reflected that the patient's treating physician had indicated that such equipment was medically necessary when in fact the physician frequently named as the treating physician did not treat the patient or evaluate the patient;

d. that the claims were not the product of kickbacks when in fact kickbacks were paid in order to induce the referral of beneficiaries and recipients whose Medicare and Medicaid numbers were billed for various types of medical equipment which was either not delivered or not medically necessary; and

e. that the equipment was provided on the date listed on the claim forms submitted to Medicare and Medicaid, when in fact, the equipment was never delivered, the equipment was not needed by the patient, and/or the equipment was a cheaper version of what was actually billed to Medicare and Medicaid.

## MANNER AND MEANS

19.    The manner and means of the conspiracy included, but were not limited to the following:

20.    Defendant LAWRENCE T. TYLER would and did bill or direct others to bill Medicare and Medicaid for orthotic braces and related equipment when in truth and in fact the equipment was not delivered to beneficiaries and/or was not medically necessary.

21.    Defendant LAWRENCE T. TYLER would and did purchase beneficiary information from at least one co-conspirator; the information would and did include the patient's name, address, birth date, and Medicare and/or Medicaid beneficiary number, for the purpose of billing upon that beneficiary's number.

22.    Defendant LAWRENCE T. TYLER would and did give Western Union money orders to at least one co-conspirator in payment for beneficiary information upon which TYLER and others at TYLER'S direction, would and did falsely bill Medicare and Medicaid.

23.    Defendant LAWRENCE T. TYLER would not and did not collect or direct others to collect co-payments from Medicare beneficiaries as required by Medicare, in part because such collections would have been for equipment that was never delivered, ordered and/or needed.

24.   Defendant LAWRENCE T. TYLER would and did cause false claims to be submitted to Medicare and Medicaid by representing that a physician had authorized and approved patients to receive certain durable medical equipment when in truth and fact such equipment had not been ordered by a treating physician with knowledge of the patient's condition – including but not limited to patients L.I., I.P., J.D., and P.J.

25.   Defendant LAWRENCE T. TYLER would and did fail to order sufficient DME equipment or order the correct equipment that could be billed under Medicare's equipment codes to support his durable medical equipment claims to Medicare and Medicaid.

26.   Defendant LAWRENCE T. TYLER and Defendant MATHEW OKOROCHA would and did create and direct others to create, false orthotic equipment invoices to from KC International to support Medicare and Medicaid claims that had already been submitted for payment and to support Defendant TYLER's efforts to continue billing and prevent the revocation of TYLER's Medicare provider number.

27.   Defendant LAWRENCE T. TYLER would and did use the proceeds of the Medicare and Medicaid fraud to purchase patient information, pay other operating expenses and to unlawfully enrich himself.

## OVERT ACTS

28.   In furtherance of the conspiracy and to effect the objects thereof, the following

overt acts, among others, were committed in the Southern District of Texas, and elsewhere:

29.    On or about October 5, 2005, Defendant LAWRENCE T. TYLER received a Texas articles of incorporation for 1866ICPAYDAY.COM L.L.C.

30.    On or about October 24, 2005, Defendant LAWRENCE T. TYLER received a Employer Identification Number from the Internal Revenue Service.

31.    On or about December 28, 2005, Defendant LAWRENCE T. TYLER entered into a lease of office space on South Dairy Ashford in Houston, Texas.

32.    On or about July 24, 2006, Defendant LAWRENCE T. TYLER opened a bank account in the name of 1866ICPAYDAY.COM LLC at Bank of Texas, the account ending in x3456, wherein Medicare was authorized to automatically deposit paid claims.

33.    On or about January 26, 2007, Defendant LAWRENCE T. TYLER, doing business under the name 1866ICPAYDAY.com, LLC, received notice from Medicare that it would be given a Medicare provider number.

34.    On or about March 28, 2007, 1866ICPAYDAY.COM LLC became a Medicaid provider.

35.    On or about April 17, 2007, Defendant LAWRENCE T. TYLER filed an assumed name certificate for Global Medical Supply Group.  The certificate was filed

by 1866ICPAYDAY.COM, L.L.C.  Defendant LAWRENCE T. TYLER is listed as the registered agent.

36.    On or about January 11, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary I.P. that was not provided and/or not medically necessary

37.    On or about February 13, 2008, Defendant LAWRENCE T. TYLER authorized Medicaid and Medicare to automatically deposit funds into 1866ICPAYDAY.COM LLC bank account at Wachovia Bank, with the last 4 digits of x7342.

38.    On or about April 18, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary J.M. that was not provided and/or was not medically necessary.

39.    On or about May 29, 2008, Defendant LAWRENCE T. TYLER requested that Defendant MATHEW OKOROCHA create and direct another to create false invoices from OKOROCHA's company, KC International, to support equipment claims submitted to Medicare and Medicaid and in response to a Medicare inspection of TYLER's DME business, which was conducted on May 29, 2008.

40.    On or about June 13, 2008, Defendant LAWRENCE T. TYLER forwarded to Medicare what he knew were false KC International invoices, which purported to represent approximately $327,844.65 in orthotic equipment allegedly purchased

as part of TYLER's response to Medicare's request for invoices to support TYLER's Medicare claims.

41.    On or about July 9, 2008, Defendant LAWRENCE T. TYLER caused Medicare to be billed for orthotic equipment for beneficiary S.C. that was not provided and/or not medically necessary.

42.    On or about July 22, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary P.J. that was not provided and/or not medically necessary.

43.    On or about August 7, 2008, Defendant LAWRENCE T. TYLER caused Medicare to be billed for orthotic equipment for beneficiary K.M. that was not provided and/or not medically necessary.

44.    On or about September 5, 2008, Defendant LAWRENCE T. TYLER, doing business as 1866ICPAYDAY.COM LLC paid a co-conspirator $500 for the referral of patient(s), using a Western Union money order, No. 08-522364403.

45.    On or about September 22, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary J.D. that was not provided and/or not medically necessary.

46.    On or about October 10, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary L.I. that

was not provided and/or not medically necessary.

47.    On or about October 10, 2008, Defendant LAWRENCE T. TYLER caused Medicare and Medicaid to be billed for orthotic equipment for beneficiary M.H.. that was not provided and/or not medically necessary.

48.    On or about December 20, 2008, Defendant LAWRENCE T. TYLER again submitted or caused to be submitted to Medicare false orthotic equipment invoices created by Defendant MATHEW OKOROCHA and at the direction of Defendant OKOROCHA from OKOROCHA's company, KC International, in response to Medicare's inspection of TYLER's DME business, which occurred on May 29, 2008.

**All in violation of Title 18, United States Code, Section 371.**

## COUNTS TWO THROUGH NINE
### (Health care fraud 18 U.S.C. §§ 1347 and 2)

At all times material to this Indictment:

1. Paragraphs 1 through 16 and 18 through 27 of Count One are realleged and incorporated as though fully set forth herein.

2. Beginning in or about 2005, Defendant LAWRENCE T. TYLER and others known and unknown to the grand jury, billed Medicare and Medicaid for DME allegedly provided to beneficiaries, when in fact the equipment was either not delivered and/or not medically necessary.  Further, the orthotic braces that were occasionally provided were of inferior quality to the products for which Medicare and

14

Medicaid were in fact billed.  As a result of this unlawful scheme, Medicare and Medicaid were billed in excess of $2,458,144.32, and paid in excess of $1,238,823.85 for the false and fraudulent claims identified below.

3.    The table below details the HCPCS codes for DME equipment that was routinely billed upon by TYLER:

| Knee, ankle brace | Elbow brace | Shoulder brace | Wrist brace | Back brace | Cervical collar | Flexion glove | Heat pad | Walker/ Canes |
|---|---|---|---|---|---|---|---|---|
| L1800 L1832 L1930 | L3760 | L3652 | L3931 | L0637 | L0200 | L3912 | E-0215 | E0143 E0156 E0105 |

## Purpose of the scheme to defraud

4.    It was the purpose of the scheme to defraud that the defendant and others known and unknown to the Grand Jury unlawfully enriched themselves by falsely and fraudulently representing to Medicare and Medicaid, that various types of medical DME were being provided and/or were medically necessary when in fact the Defendant LAWRENCE T. TYLER knew that DME equipment was not provided and/or not medically necessary.

## EXECUTION OF THE SCHEME

5.     Beginning in or about 2005 and continuing thereafter through in or about 2009, in the Houston Division of the Southern District of Texas, the defendant,

### LAWRENCE T. TYLER

aided and abetted by others known and unknown to the grand jury, did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain by means of material, false and fraudulent pretenses, representations, and promises, any of the money and property owned by and under the custody of a health care benefit program, which affected interstate commerce, in connection with the delivery of and payment for DME, to wit; on or about the below listed dates, the defendant caused to be submitted false and fraudulent claims to Medicare and/or Medicaid, including claims for orthotic braces and related equipment, in the amounts listed below:

| C T | Patient Medicare/ Medicaid Number | DME code | Dates of Service (on or about) | Approx. amount billed to Medicare | False representation (including but not limited to) |
|---|---|---|---|---|---|
| 2 | Medicare No. X1092A<br><br>J.M. | E0156<br>L0200<br>L0637<br>L1832<br>L3652<br>L3912<br>E0143<br>E0215 | 4-18-08 | $3,076.31 | Equipment not provided and/or not medically necessary |
| 3 | Medicare No. X3171A<br><br>L.I. | E0215<br>L0637<br>L1930<br>L3652<br>L3760<br>L3912<br>L3931<br>L1832 | 10-10-08 | $4,079.79 | Equipment not provided and/or not medically necessary |
| 4 | Medicare No. X3489A<br><br>J.D. | L0637<br>L1930<br>L3652<br>L3760<br>L3912<br>L3931<br>E0215<br>L1800 | 9-22-08 | $3,242.39 | Equipment not provided and/or not medically necessary |

| 5 | Medicare No. X6068A

P.J. | E0215 L0637 L1930 L3652 L3760 L3931 E0143 E0156 L1832 | 7-22-08 | $4,021.34 | Equipment not provided and/or not medically necessary |
|---|---|---|---|---|---|
| 6 | Medicare No. XX2631A

I.P. | E0215 L0637 L1832 L1930 L3652 L3760 L3912 L3931 | 1-11-08 | $4,090.00 | Equipment not provided and/or not medically necessary |
| 7 | Medicare No. X9620B

S.C. | E0215 L0637 L3652 L3760 L3912 L1832 | 7-9-08 | $3,246.95 | Equipment not provided and/or not medically necessary |

| 8 | Medicare No. X2128A | E0105 E0215 L0637 L3652 | 10-10-08 | $1,328.38 | Equipment not provided and/or not medically necessary |
|---|---|---|---|---|---|
|   | M.H. |   |   |   |   |
| 9 | Medicare No. XX3904A | L1832 E0215 L0637 L1930 L3652 L3760 L3912 | 8-7-08 | $980.44 | Equipment not provided and/or not medically necessary |
|   | K.M. |   |   |   |   |

**In violation of 18 U.S.C. §§ 1347 and 2.**

**COUNT TEN**
**MONEY LAUNDERING**
**(18 U.S.C. 1957)**

Paragraphs 1 through 16 and 18 through 27 of Count One of this Indictment are re-alleged and incorporated as though fully set forth herein.

The allegations contained in Counts Two through Nine are realleged and incorporated as though fully set forth below.

On or about the dates set forth below in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

## LAWRENCE T. TYLER

did knowingly engage and attempt to engage in a monetary transaction, by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section 1347, as follows:

| COUNT | Date | Monetary transaction |
|---|---|---|
| 10 | 1/21/2009 | Counter withdrawal of $140,500.00 from Wachovia bank account ending in x7342. |

**In violation of Title 18, United States Code, Section 1957.**

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(7))

Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the criminal offenses charged in Counts One though Nine of this Indictment, the United States of America gives the Defendants, LAWRENCE T. TYLER and MATHEW OKOROCHA, notice that, upon conviction of conspiracy in violation of Title 18, United States Code, Section 371, or of a violation of Title 18, United States Code, Section 1347, all property, real or personal, which constitutes or is derived, directly or indirectly, from gross proceeds traceable to such offenses, is subject to forfeiture.

## NOTICE OF FORFEITURE
### (18 U.S.C. § 982(a)(1))

Pursuant to Title 18, United States Code, Section 982(a)(1), as a result of the criminal offense charged in Count Ten of this Indictment, the United States of America gives the Defendant **LAWRENCE T. TYLER** notice that, upon conviction of money laundering in violation of Title 18, United States Code, Section 1957, all property, real or personal, involved in money laundering or traceable to such property, is subject to forfeiture.

### Money Judgment

Defendants LAWRENCE T. TYLER and MATHEW OKOROCHA are notified that upon conviction, a money judgment may be imposed equal to the total value of the property subject to forfeiture, which is at least $1,238,823.85, and for which the defendants may be jointly and severally liable.

### Property Subject to Forfeiture

The property subject to forfeiture includes, but is not limited to, the following property:

(a) $1,238,823.85, or more, in gross proceeds obtained from the conspiracy charged in Count One of the Indictment.

(b) all money obtained from the scheme to defraud, including, but not limited

to, the amounts stated in Counts One through Nine of the Indictment.

(c) real property at 8330 Laurel Leaf Lane, Humble, Texas, together with all improvements, buildings, structures and appurtenances, and legally described as follows:

> Lot 1, Block 2 of PINEHURST OF ATASCOCITA, SECTION 11, a subdivision in Harris County, Texas, according to the map or plat thereof recorded in Volume 316, Page 14 of the Map Records of Harris County, Texas.

The owner of record is listed as Osman Tyler.

## Substitute Assets

The Defendants are notified that in the event that property subject to forfeiture, as a result of any act or omission of defendants,

(A) cannot be located upon the exercise of due diligence;

(B) has been transferred or sold to, or deposited with, a third party;

(C) has been placed beyond the jurisdiction of the court;

(D) has been substantially diminished in value; or

(E) has been commingled with other property that cannot be divided without difficulty,

the United States will seek to forfeit any other property of the defendants up to the total value of the property subject to forfeiture, pursuant to Title 21, United States Code, Section 853(p), incorporated by reference in Title 18, United States Code,

Section 982(b)(1).

A TRUE BILL

**ORIGINAL SIGNATURE ON FILE**

FOREPERSON

KENNETH MAGIDSON
UNITED STATES ATTORNEY

BY:

Suzanne Bradley
Special Assistant United States Attorney